Law Offices of
GEORGE C. BOISSEAU
SBN 75872
740 4th Street
Second Floor
Santa Rosa, California 95404
Phone: (707) 578-5636
Fax: (707) 578-1141
E-Mail: boisseaugc@msn.com

Attorney for Defendant
EDWIN ALEJANDRO CERVANTES-SANCHEZ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR-18-0279-WHO |
| Plaintiff, | ) | DEFENDANT'S SENTENCING MEMORANDUM |
| v. | ) | |
| EDWIN CERVANTES-SANCHEZ, | ) | |
| Defendant. | ) | Date: May 30, 2019<br>Time: 1:30 p.m. |

The defendant, EDWIN ALEJANDRO CERVANTES-SANCHEZ (CERVANTES-SANCHEZ), by and through his counsel of record, George C. Boisseau, hereby submits his Sentencing Memorandum.

## I.
## INTRODUCTION

> The quality of mercy is not strain'd,
> It droppeth as the gently rain from heaven
> Upon the place beneath: it is twice bless'd;
> It blesseth him that gives and him that takes:
> 'T is mightiest in the mightiest; it becomes
> The thronèd monarch better than his crown;
> His sceptre shows the force of temporal power,
> The attribute to awe and majesty,
> Wherein doth sit the dread and fear of kings;
> But mercy is above this sceptred sway;
> It is enthroned in the hearts of kings,

1

SENTENCING MEMORANDUM

> It is an attribute to God himself;
> And earthly power doth then show likest God's
> When mercy seasons justice.

Shakespeare, William, *The Merchant of Venice*, Act IV, Scene I.

On February 7, 2019, CERVANTES-SANCHEZ, entered a plea of guilty to possessing, with intent to distribute, 5-grams or more of actual methamphetamine. He admitted selling 24-grams of methamphetamine to a confidential source for $300. He was selling the methamphetamine to fund his long-term abuse of cocaine. Despite being only 20-years old at the time of the offense conduct, he had been abusing cocaine, and other drugs, for years.

CERVANTES-SANCHEZ has fully admitted his conduct to this Court and to the authorities in a "safety valve" debriefing. But more importantly, he has fully participated in all pre-trial release rehabilitation programs offered by the Pre-Trial Service Office. It started with treatment and counseling at the Residential Reentry Center and progressed to out-patient programs upon his transition to the community. He is both appreciative of the opportunity to participate in all available programs and wants to continue his treatment and counseling programs to ensure that he fulfill his desire to be a productive member of the community.

There is no plea agreement in this case. CERVANTES-SANCHEZ qualifies for "safety-valve" treatment, giving this Court options. The United States Probation Department recommends a downward variance from the guidelines of 1-year and 1-day of custody, a most reasonable recommendation. However, custody may not be the best option for this young man or society in general. The $36,300 it costs to house him in the Bureau of Prisons can be put to better use such as paying for his counseling, treatment and education. If punishment was the only goal of sentencing perhaps custody would be warranted. But the goal of sentencing should be rehabilitation and this a prime example of taking the opportunity to use the resources of the government to make positive and long-lasting change in one young man in need without just warehousing him for a year or longer.[1]

---

[1] One New York study found that placing 150 felony offenders in a drug treatment program instead of incarceration saved the city system over $7 million in taxpayer money.

CERVANTES-SANCHEZ needs the life-skills programs offered by the conviction alternative programs available in this district. He has already demonstrated that he will enthusiastically participate in such programs. Moreover, his success so far should not be used against him but should rather serve as an indicator that he will continue to benefit from these programs. He should be able to live up to his potential, impossible when he was addicted to cocaine but now possible with treatment and counseling. He will be a work in progress for years but should get started now.

## II.

## THE PRESENT AND FUTURE.

CERVANTES-SANCHEZ is truly remorseful for his conduct. Further, he wishes to participate in all treatment, vocational, educational and counseling programs available. He has a well-documented substance abuse problem which contributed to the instant offense conduct.

As best he can, CERVANTES-SANCHEZ has searched within himself to determine what caused him to become involved in this criminal activity and what he can do to never place himself where he repeats it. He realizes he must continue to address his substance abuse problem which has contributed to every one of his criminal offenses. He realizes that his addiction not only placed him in this position, but that will hamper him in the future in both his professional and personal life unless he continues to receive long-term drug treatment counseling.

Not only has his conduct greatly disappointed his family, but it is certainly not the example he wishes for younger siblings. CERVANTES-SANCHEZ believes he must turn away from drugs and continue to act responsibly to regain the respect of all his family. First, he has accepted full responsibility for his conduct. He must now repay his family for the love and support they have shown him throughout these difficult months. And he can only do this by changing his life-style. He has a family to support and care for--he knows that he must grow up and face adulthood.

CERVANTES-SANCHEZ has been addicted to cocaine and marijuana since he was 16 years old. His addiction affected all phases of his life–family and interpersonal

relationships, employment and education. Because of his addiction, he could not achieve any of his life goals. He dropped out of college (San Jose City College) because he could not concentrate. He wanted to study heating and air conditioning (HVAC) so he could obtain meaningful employment but that was impossible while still addicted. Holding any job was difficult because of his addiction–he could not even get out of bed some mornings.

On the positive side, however, CERVANTES-SANCHEZ has made considerable progress on pre-trial release because of his participation in the drug treatment programs offered at the half-way house and by Pre-Trial Services upon his transition from the half-way house to the community. At the half-way house he participated in AA/NA meetings, classes dealing with coping skills and mental health classes (Doland Mental Health). Currently, he is participating in an out-patient drug treatment program, the East Bay Community Recovery Project, with regular drug testing by Pre-Trial Services. He is hoping to go back to school and Pre-Trial Services is helping him in that regard.

CERVANTES-SANCHEZ needs a structured program to deal with his addiction. While he has made progress these last year, he needs continued structure to insure that he develop the necessary skills to deal with this life-time illness. He has already demonstrated a willingness to change his life and his commitment to that goal would make him an excellent candidate for sentencing alternatives.

CERVANTES-SANCHEZ is requesting this opportunity to change his life. Custody may indeed seriously erode the progress he has already made, a setback for him and the community at large.

III.

OBJECTIONS TO THE PRE-SENTENCE REPORT

The defense does not object to the Pre-Sentence Report's calculation of CERVANTES-SANCHEZ's offense level or criminal history. However, CERVANTES-SANCHEZ requests that the narrative following the unlawful sexual intercourse conviction of 3/30/2016 be limited to the facts of the conviction rather than the claimed offense conduct which was never proved and is not part of the conduct admitted by him. He admitted to

4

SENTENCING MEMORANDUM

having sex with Ms. Barrera-Villa when he was 18 and she was 17-years old.  He received a probation grant for the misdemeanor of unlawful sex with a minor, a violation of California Penal Code §261.5(b).  There is no sex offender registration and Mr. Barrera-Villa, now an adult, went to court herself to remove the no-contact condition of probation which was part of the original grant of probation.

It is feared that the narrative paints a far move negative portrait of what happened than what really happened.  None of this other conduct resulted in a conviction and its inclusion in the pre-sentence report is highly prejudicial and inflammatory.  Moreover, it may unfairly be used by other agencies, including the Bureau of Prisons, to determine appropriate programs or housing.

The district court may rely on information contained in the Pre-Sentence Report only if it is supported by reliable information.  See generally, *United States v. Salinas*, 305 F.3d 582, 587 (7th Cir.2004); Fed.R.Crim.Pro. 32(i)(3)(b).  In this case, however, the information put in  the Pre-Sentence Report is inaccurate and not supported by the record of the proceedings in San Mateo County Superior.  See also, *United States v. Weston*, 448 F.2d 626, 633 (9th Cir. 1971).  In *Weston* the court considered the type of information on which a sentencing judge could rely.  The trial court in that case sentenced the defendant to the maximum possible term based on a report of uncharged criminal conduct by the defendant (*Id.,* at 633.)  The report was based on the opinion of a law enforcement agent, and an unsworn statement by another agent that information from an unidentified informant partially corroborated the charge.  (*Ibid.*)  The court found this information was lacking a proper factual basis.  (*Ibid*.)  Noting that false information could not be considered at sentencing, the court held that information of the type at issue was, likewise, insufficiently reliable to be considered at sentencing.  (*Id*., at 634.)  It would be a "great miscarriage of justice" to require the defendant to disprove the allegation. (*Ibid.*)

5
SENTENCING MEMORANDUM

IV.

<u>THIS COURT SHOULD EITHER DEFER SENTENCING OR IMPOSE AN AVAILABLE CONVICTION ALTERNATIVE PROGRAM BECAUSE IT IS A REASONABLE SENTENCE CONSIDERING THE FACTORS SET OUT IN 18 U.S.C. §3553(A)</u>.

A deferred sentence or conviction alternative sentence would serve the dual purpose of punishment and rehabilitation. It will give him an opportunity to participate in drug treatment, educational, and counseling programs within in this district.

Sentencing courts must give "meaningful consideration" to all of the statutory factors in 18 U.S.C. §3553(a).

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for–(A) the applicable category of offense committed by the applicable category of the defendant as set forth in the guidelines...; (5) any pertinent policy statement...issued by the Sentencing Commission...that is in effect on the date the defendant is sentenced.; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

(18 U.S.C. §3553). Section 3553(a) clearly states that a court must impose a sentence that is "sufficient but not greater than necessary to comply with the purposes of sentencing. This requirement is often referred to as 'the parsimony provision," and the Supreme Court has referred to it as the "overarching instruction" of 18 U.S.C. §3553(a). See *Kimbrough v. United States,* 552 U.S. 85 (2007). Although the offender's conduct is part of the sentencing equation, it is not the totality of it, and the sentencing court must not focus on the offense at the expense of the individual offender. *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Ameline*, 409 F.3d 1073 (9th Cir.2005)(*en banc*).  The sentence must be long enough to reflect the seriousness of the offense, provide for just punishment and promote respect for the law. Further, it should afford adequate deterrence to criminal conduct in

general and protect the public.  It must be "sufficient but not greater than necessary" to reflect societal concerns and individual considerations.

      A sentencing alternative will reflect the seriousness of the offense, provide for just punishment and promote respect for the law.  It affords adequate deterrence to criminal conduct in general and protects the public.

      CERVANTES-SANCHEZ has admitted his responsibility early in these proceedings. He has matured during these last year and has had much time to reflect upon his past and future.  He is a man who has family support behind him.   This sentence will adequately punish him for his conduct and at the same time give him the opportunity and  resources to become a productive member of society.  By doing this, he will be able to develop the tools to deal with his drug addiction.

## CONCLUSION

For the foregoing reasons, CERVANTES-SANCHEZ respectfully requests that this Court place him in either the Conviction Alternatives Program (CAP), the Post-Plea Division Program or the Diversion/Deferred Sentencing Court. Such a sentence is reasonable within the meaning of *Gall v. United States*, 552 U.S. 38 (2007) and consistent with the factors set out in 18 U.S.C. §3553(a). CERVANTES-SANCHEZ would benefit greatly from the counseling, rehabilitation and treatment programs offered by these programs and has shown, for his part by his successful participation in all pre-trial release programs, that he is both deserving and willing to accept the life changing opportunities available. This is a young man at the cross-roads of his life–the path he is choosing will allow him to be fully engaged in the community and be a productive member of the society. He is determined to place this unfortunate chapter of his life behind him but at the same time make it a positive experience by learning new life skills and a better way of living. He has the family support to help him in this regard. The positives he has in his life should enable him to be successful in all available programs.

Dated: May 23, 2019

Respectfully submitted,

/s/
GEORGE C. BOISSEAU

Attorney for Defendant
EDWIN CERVANTES-SANCHEZ

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing <u>SENTENCING MEMORANDUM</u> was served this date to the following parties and attorneys for parties by e-filing and mailing a copy to:

> Sheila Anil Gogate Armbrust
> Assistant U.S. Attorney
> United States Attorney's Office
> Northern District of California
> 11th Floor Federal Building
> 450 Golden Gate Avenue
> San Francisco, California 94102
> Fax: (415) 436-7234

I caused the following additional parties to be personally served by mailing a copy to:

> Monica Romero
> United States Probation Officer
> United States Probation Department
> 17th Floor Federal Building
> 450 Golden Gate Avenue
> San Francisco, California 94102
> Fax: (415) 436-7572

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 23rd day of May, 2018, in Santa Rosa, California.

                                                        /s/
                                        GEORGE C. BOISSEAU

SENTENCING MEMORANDUM